Henry **MITCHELL**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

Civ. A. No. 586–54.

United States District Court
D. New Jersey.

Nov. 10, 1955.

As Amended Nov. 16, 1955.

Breslin & Breslin, by John J. Breslin, Hackensack, N. J., for plaintiff.

Raymond Del Tufo, U. S. Atty., by Hamilton Kean, Asst. U. S. Atty., Newark, N. J., for defendant.

WORTENDYKE, District Judge.

This is an action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2674, to recover for injuries received by plaintiff bus driver when the vehicle he was operating was struck by an army truck. At the trial the defendant did not contest the plaintiff's evidence that the collision was the result of the negligent operation of the army truck and that the collision was the proximate cause of whatever injuries the plaintiff suffered. The only remaining issues relate to the nature and extent of the plaintiff's injuries and the amount of damages to which he is entitled.

Findings of Fact

On December 28, 1953, plaintiff, a bus driver employed by Public Service Coordinated Transport (hereinafter referred to as "Public Service") was injured by reason of the collision between the bus he was operating and an army truck. Plaintiff had stopped his bus at an intersection for the purpose of discharging and taking on passengers when the army truck, traveling in the same direction as the bus, struck the left rear corner of the standing bus. The force of the collision drove the bus approximately 15 feet forward and threw the plaintiff from the driver's seat. Plaintiff's left arm was caught and twisted between his body and the horizontal steering wheel of the bus.

The resulting injuries to the plaintiff, involving his left arm and shoulder, consisted of a tearing, without severance, of the left biceps tendon and damage to the sheath at the groove adjacent to the point of attachment of the tendon to the head of the left humerus. These injuries required hospital and medical care and diagnosis, were and continue to be attended by constant or intermittent pain, and have resulted in a permanent limitation of function at the plaintiff's left shoulder joint and left elbow joint, with an atrophy of the left biceps muscle and a diminution of grasping power in the left hand. Plaintiff demonstrated an inability to abduct his left arm to a height above the level of the shoulder, to elevate his arm to a vertical position either laterally or forward, to completely flex the left forearm upon the left upper arm at the elbow, and to completely close the fingers of the left hand upon the palm of the left hand. Ever since the injury plaintiff has suffered pain in his left

arm and shoulder and the pain is aggravated upon the approach of inclement weather. Plaintiff has difficulty in dressing and undressing himself and requires the assistance of his wife.

At the time of the collision, plaintiff, who was 51 years old, was in apparent good health and had been employed as a bus driver by Public Service for approximately 12½ years. Immediately prior to the commencement of his employment by Public Service, he had been employed by a bakery concern as a house-to-house salesman. The latter employment consisted of the operation of a delivery truck and the carrying of baskets of baked goods from the truck to houses on his route. Earlier, plaintiff had been employed as a grocery chain-store manager. As a bus driver, plaintiff was earning approximately $82 per week, and had he continued in this employment until age 65, he would have been retired by Public Service with a pension of about $1,000 per year. According to the testimony of a competent actuary, who based his testimony on expectancy of life tables founded upon the United States Census of 1950, the expectancy of life of plaintiff at the time of the accident was 22.06 years.

By reason of the injuries which he sustained, the plaintiff is unable to engage in the work of driving a bus and he has not performed any gainful employment since the date of the collision. Plaintiff has made one attempt to seek employment outside of Public Service, but this effort was unsuccessful. Under the terms of the union contract governing plaintiff's employment, he is entitled to receive a disability pension of $60 per month. This pension will continue for the plaintiff's life, or until he secures employment. The union contract requires Public Service to endeavor to provide plaintiff with employment in its bus operating or bus maintenance department. Such placements are made of those upon a waiting list in order of seniority; which order is departed from only when the person next otherwise entitled lacks qualification for the job then available. During the past year the personnel manager of Public Service has, in accordance with the union contract, secured employment within the company for 40 out of 75 disabled employees. The positions given these disabled employees fall within the classifications of checkers, depot clerks, porters, lavatory attendants, ticket agents, depot utility men, depot masters and the like. The wages paid by these jobs average $65 a week. One of the forty persons so re-employed was a bus driver who had suffered a very severe permanent leg injury. He was given a job as depot clerk, the duties of which position plaintiff, as former manager of a grocery chain store, would be qualified to perform. Plaintiff is seventeenth or eighteenth in seniority on the list of 21 disabled former transportation employees for whom the personnel manager has been endeavoring, during the past six to nine months, to secure other jobs.

Under these circumstances I consider it probable that re-employment will be secured for plaintiff within the next three months at an annual wage of approximately $3,300 ($65 per week or $700 less than his annual wage rate on December 28, 1953). He has lost wages of approximately $8,000 and may have lost a like amount by the time he reaches 65 years of age. The present value of such probable future wage loss is approximately $5,800. The difference in annual pension after age 65, based upon assumed annual wage of $3,300 on retirement, would be $185.50, for which a fair present allowance would be $900.

During the period from time of the accident to June 29, 1955, plaintiff underwent certain palliative diagnostic and therapeutic treatments and procedures in connection with his injuries. These treatments were necessary and appropriate in connection with reasonable efforts to effect a cure and regain use of his left arm and shoulder. The expenses incurred for such treatments were:

Peter J. Dulligan, M. D.
For services as orthopedic surgeon to and including June 29, 1955 — $150.00
Holy Name Hospital, Teaneck, N. J.
For care and treatment — 943.25
John Olpp, M. D.
For X-ray therapy (8 treatments) — 40.00
F. G. Dilger, M. D.
For services as orthopedic surgeon to and including October 5, 1955 — 40.00
Harold W. Smith, M. D.
For services as orthopedic surgeon to and including May 5, 1955 — 40.00

Dr. Dulligan, who has treated plaintiff from the date of accident, concluded that the disability resulting from the plaintiff's injuries was permanent; however, he expressed the opinion that the degree of plaintiff's recovery rendered him capable of engaging in any gainful occupation not requiring strenuous use of the left upper extremity. Dr. Dilger, who examined the plaintiff on April 12, July 9 and October 4, 1954, and again on October 5, 1955, was likewise of the opinion that, as of the last mentioned date, maximum recovery had been attained, and that, in his opinion, the plaintiff was not then and would not thereafter be capable of engaging in a gainful occupation requiring considerable use of the left arm, by reason of the functional limitations affecting and weakness in the same. This witness estimated that, as of July 9, 1954, plaintiff's disability amounted to 12½% of the left upper extremity. Dr. Smith examined and treated the plaintiff on several occasions and estimated that the disability was 30% of the left arm as of May 5, 1955. He was of the opinion that resumption of bus driving by the plaintiff would be inadvisable.

Dr. Laurence Collins, a neurologist who examined the plaintiff on March 31, 1955, found no anxiety or other neuroses or psychological abnormality of the plaintiff other than minor tremors of the eyelids and extended fingers. On the other hand, Dr. David G. Flicker, who examined plaintiff on two occasions, was of the opinion that he manifested a form of hysteria involving an unconscious exaggeration of symptoms with a hysterical fixation upon the left upper extremity. Dr. Flicker anticipated that there would probably be an improvement in plaintiff's condition after disposition of this legal proceeding for damages.

Conclusions of Law

1. This Court has jurisdiction of the subject matter of this action and of the parties hereto.

2. Plaintiff sustained personal injuries on December 28, 1953 as a proximate result of negligence on the part of defendant's agent, servant or employee in the operation of a motor vehicle which collided with the rear of the standing bus in which the plaintiff was seated.

3. In consequence of the personal injuries aforesaid, plaintiff has suffered pain, inconvenience, permanent disability of the left arm and shoulder and loss of earnings, and will in the future continue to suffer pain and disability and his earning capacity has been permanently diminished.

4. As a further consequence of the personal injuries, plaintiff necessarily and properly incurred medical and hospital expense totalling $1,213.25.

5. Plaintiff is entitled to judgment against the defendant in the sum of $20,913.25, made up of the following items:

Compensation for wages lost $8,000.00
Estimated present value of future wage and pension losses — 6,700.00
Medical and hospital expenses — 1,213.25
Compensation for pain, inconvenience and disability — 5,000.00

Total — $20,913.25

An order for judgment may be presented in accordance with the foregoing conclusions.